ACCEPTED
05-17-00717-cv
FIFTH COURT OF APPEALS
DALLAS, TEXAS
12/4/2017 1:34 PM
LISA MATZ
CLERK

# CAUSE NO. 05-17-00717-CV

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
12/4/2017 1:34:55 PM
LISA MATZ
Clerk

## IN THE FIFTH DISTRICT COURT OF APPEALS
## AT DALLAS, TEXAS

---

## IN THE INTEREST OF C.R.G., A CHILD

---

## APPELLANT'S MOTION FOR REHEARING AND
## ALTERNATIVELY MOTION FOR REHEARING EN BANC

---

Appellee, E.A.G., submits this *Appellee's Motion for Rehearing and, Alternatively, Motion for Rehearing En Banc*, in response to the opinion issued by the Court dated November 17, 2017 and requests the Court to consider the following issues:

### ISSUES PRESENTED FOR REHEARING

Issue 1: By providing Vargas – an alleged father who, prior to termination, neither registered with the paternity registry nor initiated a suit to adjudicate his parental rights – with standing to challenge a termination order granted under the authority of Texas Family Code §160.404 and §161.002(b), the Court's opinion bestows parental rights and associated constitutional protections upon a legal stranger to a child

1

under one year of age and adds notice requirements to a Texas Family Code §160.404 and §161.002(b) termination in direct contravention to relevant Texas Family Code provisions and relevant case law.

Issue 2: The Opinion further errs by disregarding the uncontroverted evidence offered by E.A.G. negating the trial court's jurisdiction to determine Vargas's claims and by considering unsworn statements and allegations by Vargas which were not offered into evidence in the trial court.

ARGUMENT AND AUTHORITIES

**Issue 1. An alleged father who neither registers with the paternity registry nor files a suit to adjudicate his parentage prior to termination, has no then-existing right or interest with respect to a child that can be prejudiced by a termination order entered under §161.002(b) of the Texas Family Code; thus, Vargas lacks standing to maintain his bill of review.**

The Opinion claims that Vargas "has standing to maintain the underlying bill of review to challenge the constitutionality of the statute under which his paternity was terminated". Opinion at 1. Yet, Vargas

does not have, nor has he ever had "parental rights" under the law of Texas or under applicable case law. To find otherwise misconstrues §§ 160.404 and 161.002 of the Texas Family Code, requiring consideration and correction by this this Court.

The primary objective when construing a statute is to ascertain and give effect to the Legislature's intent. *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006); *see also McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex.2003). In discerning that intent, the court of appeals begins with the " 'plain and common meaning of the statute's words.' " *Id.* When the statutory language is unambiguous, we must apply the statute as written. *City of Houston v. Jackson*, 192 S.W.3d 764, 770; *see also RepublicBank Dallas, N.A. v. Interkal*, Inc., 691 S.W.2d 605, 607 (Tex.1985).

As stated in the Opinion, "[t]o have standing, the plaintiff in the bill of review action must have been a part to the prior judgment or have had a then-existing right or interest prejudiced by the resulting judgment. *Opinion* at 6; *see also Dolenz v. Wells*, No. 05-06-00840-CV, 2007 WL 259196, at *1 (Tex. App. – Dallas Jan. 31, 2007, pet. denied) (mem. op.) (emphasis added).

### A.  Applicable statutes

The applicable statutes in this case concern the parental rights in Texas by unmarried men claiming to be fathers, and the termination of any rights that such men could later assert in the absence of any affirmative action on their parts with respect to the children involved. Specifically, this Court must apply the following statutes to the matters at issue:

a. Texas Family Code § 101.0015. Alleged Father

   (a)"Alleged father" means a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined.

b. Texas Family Code § 101.024. Parent

   (a) "Parent" means the mother, a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law, or an adoptive mother or father. Except as provided by Subsection (b), the term does not include a parent as to whom the parent-child relationship has been terminated.

c. Texas Family Code § 102.009. Service of Citation

   (a) Except as provided by Subsection (b), the following are entitled to service of citation on the filing of a petition in an original suit:

(8) an alleged father, unless there is attached to the petition an affidavit of waiver of interest in a child executed by the alleged father as provided by Chapter 161 or unless the petitioner has complied with the provisions of Section

d. Texas Family Code § 160.402. Registration for Notification

(a) Except as otherwise provided by Subsection (b), a man who desires to be notified of a proceeding for the adoption of or the termination of parental rights regarding a child that he may have fathered may register with the registry of paternity:

(1) before the birth of the child; or

(2) not later than the 31st day after the date of the birth of the child.

(b) A man is entitled to notice of a proceeding described by Subsection (a) regardless of whether he registers with the registry of paternity if:

(1) a father-child relationship between the man and the child has been established under this chapter or another law; or

(2) the man commences a proceeding to adjudicate his paternity before the court has terminated his parental rights.

e. Texas Family Code § 160.404. Termination of Parental Rights: Failure to Register

The parental rights of a man alleged to be the father of a child may be terminated without notice as provided by Section 161.002 if the man:

(1) did not timely register with the vital statistics unit; and

(2) is not entitled to notice under Section 160.402 or 161.002.

f. § 161.002. Termination of the Rights of an Alleged Biological Father

(a) Except as otherwise provided by this section, the procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged father.

(b) The rights of an alleged father may be terminated if:

(3) the child is under one year of age at the time the petition for termination of the parent-child relationship or for adoption is filed and he has not registered with the paternity registry under Chapter 160;

(c-1) The termination of the rights of an alleged father under Subsection (b)(2) or (3) rendered on or after January 1, 2008, does not require personal service of citation or citation by publication on the alleged father, and there is no requirement to identify or locate an alleged father who has not registered with the paternity registry under Chapter 160.

(e) The court shall not render an order terminating parental rights under Subsection (b)(2) or (3) unless the court receives evidence of a certificate of the results of a search of the paternity registry under Chapter 160 from the vital statistics unit indicating that no man has registered the intent to claim paternity.

## B.  Applicable case law

These statutes and their impact on the rights of alleged "fathers" who failed to take the appropriate action to assert alleged parental rights have been examined and upheld by this Court in the *Baby Girl S.* Opinion. *See In re Baby Girl S.*, 407 S.W.3d 904, 910 (Tex. App.—Dallas 2013, pet. denied). *In Lehr v. Robinson*, a similar paternity registry statute from the state of New York was upheld by the United States Supreme Court because it "adequately protected" a putative father's "opportunity to form" a relationship with his alleged child, should he have availed himself upon it. *Lehr v. Robertson*, 463 U.S. 248, 263-64, 103 S. Ct. 2985, 2995, 77 L. Ed. 2d 614 (1983)_Both cases were discussed in detail in E.A.G.'s *Appellee's Brief*. *See Appellee's Brief* at 16-21.

Despite the Opinion's attempt to distinguish these cases based upon the procedural mechanism used to challenge standing and/or the existence of purported parental rights asserted[1], these opinions reveal the following legal analysis relevant to the matters before this Court:

- Parental rights do not exist by mere biology alone; an alleged father does not automatically have full constitutional paternal

---

[1] The reference to "plea to the jurisdiction" is not to a particular procedural vehicle but to the substance of the issue raised. *Texas Dept. of Criminal Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004).

rights by virtue of a mere biological relationship. *See Lehr*, 463 U.S. at 261; *Baby Girl S.*, 407 S.W.3d at 912; *see also In re C.M.D.*, 287 S.W.3d 510, 516 (Tex.App.-Houston [14th Dist.] 2009, no pet.)

- The biological connection instead offers the natural father the opportunity to develop a relationship with his child. *Lehr*, 463 U.S. at 262. "If he fails to do so, the Federal Constitution will not automatically compel a state to listen to his opinion of where the child's best interests lie." *Id.*

- An alleged father in Texas must either register with the paternity registry or initiate a suit to adjudicate parentage with respect to a child prior to effectuate a right to notice of termination proceedings. *Baby Girl S.*, *see also* Tex. Fam. Code §§ 160.604, 161.002(b)(3).

- In Texas, the paternity registry statute provides an alleged father with the means of asserting his rights without depending on the mother, the courts, or anyone else to identify him. Baby Girl S., 407 S.W.3d at 915. The registry puts control in the hands of alleged fathers, independent of the mother. Baby Girl S., 407 S.W.3d at 921.

- The possibility that a putative or alleged father may have failed to assert his rights to a child through a paternity registry or other available means because of his ignorance of the law cannot be a sufficient reason for criticizing the law itself. See Lehr, 463 U.S. at 264.

- Even to fathers who are known to the mother and have been prevented by the mother from learning of the pregnancy and birth, Texas Family Code 160.403, 161.002(b)(3) and (c-1), allow for termination of parental rights of an alleged father without notice and without identifying or locating the alleged father if

child is under age of one and alleged father did not register with the paternity registry. *Baby Girl S.*, 407 S.W.3d at 910.[2]

These legal principles are instructive to this Court's analysis of Vargas's claimed interest with respect to C.R.G. as it existed at the time of the termination order challenged through his bill of review in the underlying case.

## C.  Vargas lacked standing to challenge the termination order involving C.R.G.

The Opinion and Vargas adopt the erroneous presumption that Vargas, an unmarried man who neither registered with the paternity registry nor timely initiated a suit to adjudicate his parentage, is or was at some point the parent or father of C.R.G.  Such a position is unsupported by caselaw is contrary to the law of this State.  Texas Family Code §101.024 requires that to be a parent of a child, a man must be (1) a man presumed to be the father, (2) a man legally determined to be the father, (3) a man who has been adjudicated to be the father by a court of competent jurisdiction, (4) a man who has acknowledged his paternity

---

[2] "[h]ad the legislature intended any additional restrictions, it would have included them within the language of the statute. *In re Baby Girl S.*, 407 S.W.3d at 910.

under applicable law, or (5) an adoptive father. *See* Tex. Fam. Code §101.024. Indisputably, Vargas is none of these. He has no *parental* rights to be afforded constitutional protection. S*ee e.g. Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re J.W.T.,* 872 S.W.2d 189, 195 (Tex. 1994). Further, as state by the United States Supreme Court, "mere existence of a biological link does not merit constitutional protection." *Lehr*, 463 U.S. at 261; *see also Baby Girl S*., 407 S.W.3d at 913.

Vargas had no then-existing right or interest with respect to C.R.G. that was prejudiced by the termination order he now seeks to challenge. *See Dolenz*, 2007 WL 259196, at *1. As stated in the Opinion, the constitutionality of the statute is not addressed by this Court. Opinion at 5. Despite his claims, Vargas was not a *parent* as defined by the Texas legislature. *See* Tex. Fam. Code § 101.024. Vargas was an *alleged* father who, prior to termination, took no legal action to establish his rights to C.R.G. or to entitle him to notice of any proceeding concerning the child. *See* Tex. Fam. Code § 101.0015.

Unlike a parent, an alleged father does not have parental rights, merely the opportunity to obtain parental rights should he appropriately avail himself on the mechanisms available to become a parent under the

authority of the Texas Family Code. See *Lehr*, 463 U.S. at 262; *Baby Girl S.*, 407 S.W.3d at 913. As an alleged father, Vargas had statutory opportunities to purse his paternity claims prior to termination, yet failed to act. Thus, the Texas Family Code provision for termination of alleged fathers applied. Tex. Fam. Code §§ 160.404; 161.002(b). This does not include constitutional protections for a "parent" or the requirement of any notice to him prior to termination of whatever rights he might have otherwise acquired had he taken one of the appropriate actions. *See id; see also* § 160.404. Vargas's purported interest as an individual who had taken no action at the time of termination is vastly different from the *parents* in both cases cited in the Opinion, *Troxel v. Granville* and *In re J.W.T.* Opinion at 6; *see Troxel*, 530 U.S. at 65; *J.W.T.,* 872 S.W.2d at 195. Again, Vargas is not now nor was he ever a *parent* to C.R.G. see Tex. Fam. Code §101.024.

At the time of the termination, Vargas had neither initiated a suit to adjudicate his paternity nor had he registered with the paternity registry. (CR 69-75.) The termination order that Vargas seeks to challenge by bill of review was obtained properly, pursuant to §160.404 and 161.002(b) of the Texas Family Code. There is no contention or

challenge by Vargas to the contrary. All appropriate procedures were followed.

Contrary to the statements in *Appellant's Brief* and much of the argument considered in this Court's Opinion, Vargas's ability to register with the paternity registry and/or to initiate a suit to adjudicate his parentage was within his control, *independent* of E.A.G. Allegations about her statements to Vargas are irrelevant to Vargas's failure to assert any right he might have had to C.R.G. prior to termination, as are the claims of his period of disability (which began months after his purported sexual relations with E.A.G. and ended months prior to the termination order of which he now complains). *See Baby Girl S.*, 407 S.W.3d at 921 (CR 56; 69-75.) Because of his own inaction, even taking his claims as true, Vargas had no claims or interests with respect to C.R.G. that were prejudiced by the termination order – Vargas never had rights to the child, was never established as the father, and had no interest at the time the termination order was entered.

By bestowing parental rights on a nonparent alleged father and imposing a notice requirement for termination proceedings properly conducted under Texas Family Code § 161.002(b), the Opinion disregards

the language expressed by the Legislature in drafting this statute. *See* Tex. Fam. Code § 161.002(b); see also *Baby Girl S.*, 407 S.W.3d at 910. This in turn undermines the policy finality of judgments, especially important in termination matters, opening the gates for bill of review attacks of terminations properly granted under § 161.002 by men who failed to timely assert their claimed interest in children through the manner proscribed by the Legislature. This is the wrong result under statute and case law. This Court should, as a result, reconsider its November 17, 2017 Opinion and in all things, affirm the judgment of the trial court.

**Issue 2: Relevant, undisputed evidence negated the trial court's jurisdiction over Vargas's bill of review claims, requiring dismissal of Vargas's claims.**

**A.    If relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted.**

The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed. *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); s*ee also Austin & N.W.R. Co. v. Cluck*, 97 Tex. 172, 77 S.W. 403, 405 (1903). A plea questioning the

trial court's jurisdiction raises a question of law that we review *de novo*. *Miranda*, 133 S.W.3d at 225–26. Courts focus first on the plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists. *Id.* Pleadings are construed liberally, looking to the pleader's intent. *Id.* When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *Id.*, at 227; *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000). A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted. *Miranda*, 133 S.W.3d at 227–28.

## B. E.A.G.'s uncontroverted evidence negated the trial court's jurisdiction.

Here, E.A.G.'s plea to the jurisdiction challenged the existence of jurisdictional facts, specifically, Vargas's alleged interest in C.R.G. (CR 49, 121.) Thus, the trial court was bound to consider relevant evidence. As in *Miranda,* the uncontroverted evidence attached to E.A.G.'s plea to the jurisdiction and admitted at the jurisdictional hearing made it impossible for Vargas to establish a then-existing right or interest

prejudiced by the termination order at issue. Thus, Vargas has no standing to purse his bill of review. Specifically, the following evidence offered by E.A.G. conclusively established that termination of the rights of all alleged fathers, including Vargas, was appropriate under § 161.002(b):

- C.R.G. was under one year of age when the petition for termination of the parent-child relationship was filed (CR 79-80);

- At the time of the termination order, as shown by a certificate from the vital statistics unit of the results of a search of the paternity registry under Chapter 160, no man including Vargas had registered the intent to claim paternity (CR 56); and

- Further, at the time of the termination order, no individual, including Vargas, had initiated a suit to adjudicate parentage with respect to C.R.G. (CR 56.)

These facts were uncontroverted by Vargas and negate his standing to challenge the termination order after the fact by bill of review. (See RR Vol. 2 at 3.) Vargas presented no evidence whatsoever, controverting E.A.G.'s plea to the jurisdiction or otherwise. (See RR Vols. 2-4.) Because E.A.G. offered uncontroverted evidence negating jurisdiction of the trial court over Vargas's challenge to the termination order, the trial court was compelled to grant her plea to the jurisdiction. *Miranda*, 133 S.W.3d at

227–28. Therefore, this Court should reconsider its November 17, 2017 opinion, withdraw the same, and affirm the judgment of the trial court granting E.A.G.'s plea to the jurisdiction.

C. **This Court improperly considered statements and documents by Vargas that were not admitted into evidence and/or were unauthenticated**.

Further, it is well-established that documents not introduced into evidence at trial are not part of the record and may not be considered on appeal. *In re E.W.*, 05-01-01463-CV, 2002 WL 1265541, at *2 (Tex. App.—Dallas June 7, 2002, pet. denied);*see also Noble Exploration v. Nixon Drilling*, 794 S.W.2d 589, 592 (Tex.App.-Austin 1990, no writ); *City of Galveston v. Shu*, 607 S.W.2d 942, 945 (Tex.Civ.App.-Houston [1st Dist.] 1980, no writ). It is the duty of the appellate court to consider only the testimony adduced and the evidence tendered and/or admitted at trial. *See E.W.,* 2002 WL 1265541, at *2; see also *Rio Grande Valley Gas Co. v. City of Edinburg*, 59 S.W.3d 199, 221 n. 3 (Tex.App.-Corpus Christi 2000, no pet.) This Court should not have considered Vargas's factual arguments and allegations addressed in detail on pages 3-4 of the Opinion as such were never offered or admitted as evidence in this case

or even supported sworn to by Vargas in the form of an affidavit attached to his pleadings. (See CR 9, 69; and RR Vols. 2-4.) In fact, the text messages noted by the Opinion and cited by Vargas as proving his paternity to C.R.G. and containing a picture of the child purportedly send by E.A.G. to Vargas are dated October 14, 2015 – more than a month *before* C.R.G.'s November 2015 birth. (CR 80, 84); *see* Opinion at 3-4.

To consider the unsupported and self-serving statements contained in Vargas's pleadings, unauthenticated (and likely altered) text messages, statements of hearsay and speculation from relatives, and the like without the same being admitted as evidence or even verified through affidavit is error that should be corrected by this Court. For this reason, and the reasons set forth above, the Opinion by this Court should be reconsidered and reversed to ultimately affirm the judgment of the trial court.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellee, E.A.G., prays this Court grant this motion for rehearing, withdraw its opinion issued November 17, 2017, and reconsider the Court's determination reversing the judgment of the trial court herein.

17

Respectfully submitted,


/s/ Michelle May O'Neil

***Michelle May O'Neil***
Texas Bar No. 13260900
***Ashley Bowline Russell***
Texas Bar No. 24051760
**O'NEIL WYSOCKI, P.C.**
5323 Spring Valley Rd, Suite 150
Dallas, Texas 75254
Tel: 972/852-8000, Fax: 214/306-7830
Michelle@OWLawyers.com
AshleyR@OWLawyers.com
Attorney for Appellee, E.A.G.


## CERTIFICATE OF COMPLIANCE

I certify that this document was prepared with Microsoft 365, and that, according to that program's word-count function, the sections covered by TRAP 9.4(i)(1) contain 3,483 words.


/s/ Michelle May O'Neil

MICHELLE MAY O'NEIL

# CERTIFICATE OF SERVICE

I certify that I sent a copy of the foregoing document to counsel for Appellant, NICHOLAS VARGAS, IV by electronic service and via e-mail at [dhoffmann@qslwm.com](mailto:dhoffmann@qslwm.com).

/s/ Michelle May O'Neil
MICHELLE MAY O'NEIL